IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

| | | |
|---|---|---|
| OTHA L. TUGGER | * | CIVIL ACTION NO. 04-1727 |
| VERSUS | * | JUDGE JAMES |
| JO ANNE B. BARNHART, COMMISSIONER OF SOCIAL SECURITY | * | MAGISTRATE JUDGE HAYES |

## REPORT AND RECOMMENDATION

Plaintiff, Otha L. Tugger ("Tugger"), appeals from a decision of the Commissioner of Social Security ("Commissioner") denying his application for supplemental security income ("SSI") benefits. The appeal was referred to the undersigned United States Magistrate Judge for proposed findings of fact and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and (C). For the reasons given below, it is recommended that the decision of the Commissioner be **AFIRMED, and this matter be dismissed with prejudice.**

Introduction

Tugger filed an application for SSI benefits on October 30, 2001, alleging a disability onset date of January 12, 1989, due to impairments in his hands and left arm, high blood pressure, and nervousness. Tr. 60. At the time of his hearing before Administrative Law Judge ("ALJ") W. Thomas Bundy on February 27, 2003[1], Tugger was forty-six years old with an eleventh grade education and prior work experience as a sanitation truck driver, seasonal farm hand, and carpenter. Tr. 77, 80. On March 26, 2004, the ALJ, in a written decision, denied Tugger's application. Tr. 14-23. The Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner.

Standard of Review; Substantial Evidence

---

[1] A supplemental hearing was held on February 19, 2004, to obtain vocational expert's testimony after Tugger underwent a post-hearing consultative orthopedic examination. Tr. 14, 162-8.

This Court will uphold an ALJ's determination that a claimant is not disabled if the findings of fact upon which it is based are supported by substantial evidence, and if it was derived from a proper application of relevant legal standards. *See* 42 U.S.C. § 405(g); *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994). While substantial evidence lies somewhere between a scintilla and a preponderance, substantial evidence clearly requires "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991). Conversely, a finding of no substantial evidence is proper when no credible medical findings or evidence support the ALJ's determination. *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988). At no time should the Court "reweigh the evidence in the record, try the issues *de novo*, or substitute its judgment for the Commissioner's, even if the evidence weighs against the Commissioner's decision." *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000).

Determination of Disability

Pursuant to the Social Security Act ("SSA"), individuals who contribute to the program throughout their lives are entitled to payment of insurance benefits if they suffer from a physical or mental disability. *See* 42 U.S.C. § 423(a)(1)(D). The SSA defines a disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A). Based on a claimant's age, education, and work experience, the SSA utilizes a broad definition of substantial gainful employment that is not restricted by a claimant's previous form of work or the availability of other acceptable forms of work. *See* 42 U.S.C. § 423(d)(2)(A). Furthermore, a disability may be based on the combined effect of multiple impairments which, if considered individually, would not be of the requisite severity under the

SSA. *See* 20 C.F.R. § 404.1520(a)(4)(ii).

The Secretary of Health and Human Services has established a five-step sequential evaluation process for ALJs to utilize in determining whether a claimant is disabled under the SSA. *See* 20 C.F.R. §§ 404.1520, 416.920. The United States Court of Appeals for the Fifth Circuit, in *Loza v. Apfel*, succinctly summarized this evaluation process:

> The first two steps involve threshold determinations that the claimant is not presently engaged in substantial gainful activity and has an impairment or combination of impairments which significantly limits his physical or mental ability to do basic work activities. In the third step, the medical evidence of the claimant's impairment(s) is compared to a list of impairments presumed severe enough to preclude any gainful activity. If the claimant's impairment matches or is equal to one of the listed impairments, he qualifies for benefits without further inquiry. If the person cannot qualify under the listings, the evaluation proceeds to the fourth and fifth steps. At these steps, analysis is made of whether the person can do his own past work or any other work that exists in the national economy, in view of his age, education, and work experience. If he cannot do his past work or other work, the claimant qualifies for benefits.

219 F.3d 378, 390 (5th Cir. 2000) (internal citations omitted). The claimant bears the burden of proving a disability under the first four steps of the analysis; under the fifth step, however, the Commissioner must show that the claimant is capable of performing work in the national economy and is therefore not disabled. *Bowen v. Yuckert*, 482 U.S. 137, 146 n. 5 (1987). If at any point during the five-step review the ALJ finds the claimant disabled or not disabled, that finding is conclusive and terminates the analysis. *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

In this case, the ALJ found that Tugger suffered from "left upper extremity 'Volkmann's' contracture from elbow to wrist with ankylosis of the wrist and fingers; hypertension; alcohol and tobacco abuse; and left foot soft tissue mass plantar aspect." Tr. 19. The ALJ noted that while Tugger's these impairments were severe under the Commissioner's regulations, they did not meet or medically equal any of the listed impairments in 2 0 C.F.R. Part 404, Subpt. P, App. 1

(hereinafter *Listing*). After reviewing Tugger's allegations and the medical evidence in the record, the ALJ concluded that Tugger had the residual functional capacity ("RFC") to perform "light work activity reduced by no more than four hours of standing/walking in an eight-hour workday; no climbing, balancing, crouching or crawling; occasional kneeling and stooping, and the non-dominant hand may be used as a helper only." Tr. 22. Although the ALJ then found that Tugger could not perform his past relevant work, the ALJ did find, based primarily on the vocational expert's testimony, that there "are a significant number of [light-work] jobs in the national economy that he could perform." *Id.* Thus, the ALJ held that Tugger was not disabled.

Tugger alleges that the ALJ erroneously concluded that his impairments did not meet or medically equal those in section 1.02 of the *Listing,* and that the ALJ's credibility determinations, RFC assessment, and finding about his ability to work are not based on substantial evidence. Each of his allegations of error will be considered separately below.

ALJ's Equivalency Determination

Tugger claims that the ALJ erred in finding that his impairments did not meet or medically equal those in section 1.02 of the *Listing.* Section 1.02, which deals with major dysfunctions of a joint, requires, in general, a gross anatomical deformity, "chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion," and, of course, affirmative medical evidence. *See Listing*, § 1.02. Additional proof is required depending on the location and function of the particular joint. *See id.* at (A)-(B). For dysfunctions involving a major peripheral weight-weight bearing joint, such as the hip, knee, or ankle, a claimant must demonstrate an "inability to ambulate effectively,"[2] which generally means the inability to walk

---

[2] The *Listing* further defines the inability to ambulate effectively:
To ambulate effectively, individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living. They must have the ability to travel without companion assistance to and

without use of a hand-held assistive device; for dysfunctions involving one major-peripheral joint in **each** upper extremity, such as the shoulder, elbow, wrist, or hand, a claimant must demonstrate an "inability to perform fine and gross movements effectively."[3] Before analyzing a claimant's inability to ambulate or perform fine a gross movements, however, a claimant must satisfy the first part of subsections (A) and (B): he must have a dysfunction in either a major peripheral weight-weight bearing joint or in a major-peripheral joint in **each** upper extremity.

The medical evidence in the record demonstrates that Tugger does not suffer from a dysfunction in either a major peripheral weight-weight bearing joint or in a major-peripheral joint in **each** upper extremity. First, while Tugger complained of leg pain to every examining physician, none of the physicians confirmed that this pain resulted from a dysfunction of a

---

from a place of employment or school. Therefore, examples of ineffective ambulation include, but are not limited to, the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail. The ability to walk independently about one's home without the use of assistive devices does not, in and of itself, constitute effective ambulation.

*Listing*, at § 1.02(B)(2)(b).

[3] The "inability to perform fine and gross movements" is defined as:
an extreme loss of function of both upper extremities; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. To use their upper extremities effectively, individuals must be capable of sustaining such functions as reaching, pushing, pulling, grasping, and fingering to be able to carry out activities of daily living. Therefore, examples of inability to perform fine and gross movements effectively include, but are not limited to, the inability to prepare a simple meal and feed oneself, the inability to take care of personal hygiene, the inability to sort and handle papers or files, and the inability to place files in a file cabinet at or above waist level.

*Listing*, at § 1.02(B)(2)(c).

weight-bearing joint. Instead, each physician either indicated or prognosticated that Tugger's foot was the source of the pain. *See* Tr. 145 (Dr. Thompson); Tr.110 (Dr. Hebert); Tr. 153-4 (Dr. Po). Specifically, Dr. Po, the same physician Tugger relies on for the ALJ's alleged error, diagnosed Tugger as having a "left foot soft tissue mass plantar aspect." Tr. 154. There is simply no evidence of a dysfunction in any of Tugger's weight-bearing joints. Similarly, there is no evidence of a dysfunction in a major-peripheral joint in **each** of Tugger's upper extremities. While he has minimal use of his left arm and hand due to dysfunctions in the joints therein, his right arm is perfectly fine. Tr. 110, 152-60. Thus, the ALJ did not err in concluding that Tugger's impairments, while severe, did not meet those in section 1.02 of the *Listing*.

ALJ's Credibility Determinations

Tugger's allegation of error is that the ALJ failed to support his unfavorable determination of the credibility of Tugger's complaints with substantial evidence. Credibility judgments are exclusively reserved to ALJs, and the Court must avoid re-weighing the evidence. *See Scharlow v. Schweiker*, 655 F.2d 645, 648 (5th Cir. 1981). The ALJ's decision in this case is supported by references to medical evidence and physicians' opinions confirming that Tugger did not have a debilitating condition and that his complaints, while credible, were not disabling to the extent alleged. Tr. 16-19, 22. The record supports the ALJ's conclusion. Tr. 108-111, 145-6, 153-60. In fact, Tugger himself indicated in an "Activities of Daily Living" form that he often traveled on foot and did not have a need for an assistive device. Tr. 91, 94. Substantial evidence supports the ALJ's credibility determinations.

ALJ's RFC Determination

Tugger claims the ALJ's determination that he possessed the RFC to perform light work with some restrictions was not consistent with the opinion of Dr. Po, an examining physician,

6

and therefore is not based on substantial evidence. Under the Commissioner's regulations, "light work" is defined as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds [and] . . . requires a good deal of walking or standing." 20 C.F.R. § 404.1567(b). The ALJ determined that Tugger could perform this type of work, but with the following reductions: no more than four hours of standing/walking in an eight-hour workday; no climbing, balancing, crouching, or crawling; occasional kneeling and stooping; and the non-dominant hand can be used as a helper only. Tr. 20. Dr. Po offered the following opinion of Tugger's capabilities:

> [H]e can sit in an 8 hour period a total of 6 hours and continuously 15 minutes. He should avoid use of hand controls. He is unable to use the left hand for fine movements, dexterity, work above shoulder level or in confined places. He has limited motion of the wrists and fingers and uses it only for passive large object assistance to the right hand . . . . he should avoid frequent kneeling, squatting, climbing, and foot controls.

Tr. 154. A comparison of the ALJ's RFC assessment and Dr. Po's opinion reveals no meaningful distinction. The ALJ's reductions incorporate nearly all of the limitations Dr. Po opined, including Tugger's limited use of his left hand and his inability to frequently kneel or squat. Furthermore, because a claimant's RFC is an issue exclusively reserved to the ALJ, any difference between Dr. Po's opinion and the ALJ's RFC determination is attributed to the ALJ's consideration of the medical evidence as a whole, including Dr. Hebert's diagnosis that "[e]xcept for a non-functional left hand and decreased strength in the left arm, this individual has no functional impairments." Tr. 17, 111. Thus, it cannot be said that the ALJ's RFC determination is unsupported by substantial evidence.

<u>ALJ's Reliance on Vocational Expert's Testimony</u>

Tugger's final claim deals with the ALJ's reliance on the vocational expert's

testimony that Tugger, with the RFC that the ALJ assigned, could work as a dumping machine operator, a bookmobile driver, or, possibly, a chauffeur. According to Tugger, the exertional requirements and physical movements associated with these jobs, as listed in the Department of Labor's Dictionary of Occupational Titles ("DOT"), are inconsistent with the limitations the ALJ included in his RFC determination. In supporting this point, however, Tugger cites only to Dr. Po's opinion, which, as discussed above, is not entirely representative of Tugger's RFC. The ALJ's RFC determination incorporated most, but not all of the limitations Dr. Po expressed; the inability to perform jobs requiring use of "hand controls" and "frequent . . . foot controls" was not made part of Tugger's RFC. Furthermore, many of the inconsistencies that Tugger alleges are not supported by the jobs' definitions in the DOT. For instance, contrary to Tugger's belief, none of the jobs that the vocational expert described require frequent kneeling, squatting, and climbing. *See* DOT, §§ 529.685-102, 249.363-010, 359.673-010 (not listing squatting as a job requirement and describing kneeling and climbing as activities or conditions that do not exist). There is simply no evidence of a conflict between the ALJ's RFC determination and the jobs that the vocational expert described.

Conclusion

For the reasons stated above, it is recommended that the Commissioner's decision to deny benefits for the time period in question be **AFFIRMED**, and that this civil action be **DISMISSED with prejudice**.

Under the provisions of 28 U.S.C. §636(b)(1)(C) and FRCP Rule 72(b), the parties have **ten (10) business days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **ten**

**(10) business days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN TEN (10) BUSINESS DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED at Monroe, Louisiana, this 24th day of February, 2006.

_____
KAREN L. HAYES
U. S. MAGISTRATE JUDGE